IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICKY F.,                              )
                                       )
                Plaintiff,             )
                                       )
        v.                             )        1:23CV720
                                       )
MARTIN J. O'MALLEY,[1]                 )
Commissioner of Social Security,       )
                                       )
                Defendant.             )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Ricky F. ("Plaintiff") brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security

denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI in February 2020, alleging a

disability onset date of May 3, 2016 in both applications. (Tr. at 18, 367-77.)[2] His applications

were denied initially (Tr. at 131-72, 202-15) and upon reconsideration (Tr. at 175-201, 219-

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

26). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 229-30.) On September 22, 2022, Plaintiff, along with his attorney, attended the subsequent hearing, at which both Plaintiff and an impartial vocational expert testified. (Tr. at 18.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and on June 28, 2023, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 21.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> status post left ulnar and radius fractures; migraine headaches; bipolar disorder; and alcoholic use disorder[.]

(Tr. at 21.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 21-23.) The ALJ therefore assessed Plaintiff's RFC and determined that he could perform light work with the following, non-exertional limitations:

> [Plaintiff can] lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand or walk for up to eight hours each per day; he can frequently reach, handle, finger and feel; he can frequently balance, stoop, kneel and crouch; he

5

can have no exposure to workplace hazards including unprotected heights, dangerous machinery or ladders, ropes or scaffolds; he can perform simple routine tasks and simple work related decisions, but not at a production pace; he can interact frequently with supervisors and coworkers but never with the public; and he can adapt to occasional changes in the workplace setting.

(Tr. at 23.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 29-30.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy. (Tr. at 30-31.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now contends that the ALJ erred in two respects. First, he argues that, when assessing Plaintiff's RFC, the ALJ failed to adequately define the term "production pace." Second, Plaintiff asserts that "the ALJ failed to identify and provide a reasonable explanation resolving the conflict between the testimony of the vocational expert ('VE') and the Dictionary of Occupational Titles ('DOT') regarding the frequency of changes involved in the jobs cited at Step Five" of the sequential analysis. (Pl.'s Br. [Doc. #8] at 1.) After a thorough review of the record, the Court finds that neither of these contentions merit remand.

A. "Production pace" requirement

Plaintiff's first challenge relies on the Fourth Circuit's decision in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015) and its progeny. In <u>Mascio</u>, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held that "an ALJ

does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a plaintiff's moderate limitations in concentration, persistence, and pace in light of the ALJ's explanation throughout the administrative decision) (internal quotation omitted);

7

see also Sizemore v. Berryhill, 878 F.3d 72, 80–81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

In the present case, Plaintiff argues that the ALJ's failure to define work performed "not at a production pace" in the context of Plaintiff's RFC assessment is problematic because the ambiguity of this phrase prevents the Court from determining whether the RFC adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace, as identified at step three of the sequential analysis. (Pl.'s Br. at 3.) As Plaintiff correctly notes, in Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), the Fourth Circuit found that an RFC limitation prohibiting work "requiring a production rate or demand pace" did not provide "enough information to understand what those terms mean." Id. Accordingly, the Fourth Circuit in Thomas held that, "[w]ithout further explanation," it would not determine "whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace'"—properly account[ed] for Thomas's moderate limitations in concentration, persistence, and pace." Id. at n.5; see also Perry v. Berryhill, 765 F. App'x 869 (4th Cir. 2019) (finding that the failure to define the term "non-production oriented work setting" precluded meaningful review).

Defendant, in turn, contends that the RFC in the present case provides the "further explanation" absent in Thomas, Perry, and their progeny. Specifically, Defendant argues that the limitations in the present case align with another Fourth Circuit decision, Sizemore, 878 F.3d at 80-81, in which the Court held that substantial evidence supported a limitation to "low stress non-production jobs with no public contact." In Perry, the Fourth Circuit noted that "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in concentration, persistence and pace. . . . Those descriptors helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, 765 F. App'x at 872 n.1; see also Jones v. Saul, No. CV 8:18-2586-BHH, 2020 WL 1316532, at *5 (D.S.C. Mar. 20, 2020) ("[T]he ALJ adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace by explaining how long and under what conditions Plaintiff could focus and maintain simple tasks, and by including restrictions related to Plaintiff's ability to change activities or work settings and work in proximity to others without distraction.").

Here, as in Sizemore, the ALJ's RFC finding adequately accounted for Plaintiff's moderate limitations concentration, persistence, and pace, and included sufficient additional context to explain the restrictions intended by the ALJ. As set out above, the ALJ did not use the term "production pace" alone when describing Plaintiff's mental RFC. Rather, he limited Plaintiff to "simple routine tasks and simple work related decisions, but not at a production pace." (Tr. at 23.) The ALJ also found that Plaintiff could "adapt to occasional changes in

the workplace setting" and could "interact frequently with supervisors and coworkers but never with the public." (Tr. at 23.)

The ALJ included further explanation for his reasoning at step three of the sequential analysis. In analyzing Plaintiff's limitations in concentration, persistence, and pace, the ALJ specifically noted that Plaintiff

> testified that he has difficulty with his focus and must be redirected frequently due to his bipolar disorder. However, he demonstrated normal attention span and concentration during visits with his medical providers. Additionally, he reported that [he] enjoys watching television as a hobby and interest.

(Tr. at 22.) The ALJ also considered Plaintiff's testimony and reports that his bipolar disorder

> causes him difficulty with getting along with others, comprehending and focusing on tasks and working at a normal pace and has depressive episodes that occur about twice a week and cause him difficulty getting out of bed. He reported difficulty with his memory, completing tasks, concentration, understanding, following instructions and getting along with others.

(Tr. at 23.) However, the ALJ further determined that that the totality of the evidence failed to support Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. (Tr. at 24.) In particular, the ALJ found that

> [Plaintiff's] longitudinal medical record showed evidence of noted improvement with treatment related to his bipolar disorder throughout the relevant period. Notably, [Plaintiff] appeared to be doing well when he was medication compliant. Additionally, his mental status examination findings were mainly benign with frequent signs of intact social and cognitive functioning. Additionally, he continues to be able to perform some household tasks and chores, maintain a social relationship with his parents[,] and work during at least part of the relevant period.

(Tr. at 24.) The ALJ then proceeded to chronicle medical records relating to Plaintiff's mental health at great length. (Tr. at 24-25.) These records reflect that, between Plaintiff's alleged onset date in May 2016 and the end of 2018, Plaintiff "was assessed to be on a stable course

10

psychologically by his psychiatrist while being in compliance with his medication, . . . working part-time," and managing "ongoing stressors related to romantic relationships." (Tr. at 24.) He exhibited intact mental functioning upon examination, including normal attention and concentration. (Tr. at 24.) However, during 2019 and 2020, Plaintiff's relationship difficulties resulted in incarceration for violation of a restraining order. (Tr. at 25, 690.) The record indicated that he had "not been medication compliant prior to his incarceration" and had "not been medicated properly when he arrived at jail." (Tr. at 25, 732.) His condition improved "after his nurses started to crush his medication to prevent medication non-compliance." (Tr. at 25, 732.) Following his release from jail, Plaintiff followed up with his psychiatrist and "reported that he was doing really good on his medication regime." (Tr. at 25, 793, 796.) Subsequent records indicate that Plaintiff continued to do "well psychiatrically while one his medication regime," and mental status findings throughout this period again reflected consistently intact mental functioning and "normal attention span and concentration." (Tr. at 25, 790, 814, 817, 820.)

Although Plaintiff testified that "his parents help him manage his money and shop for groceries and remind him about his personal hygiene," the ALJ noted that Plaintiff remained able to do "some household tasks and chores, including preparing simple meals for himself and general cleaning." (Tr. at 25, 502.) Significantly, the ALJ also noted that

> [Plaintiff] worked at the unskilled to semi-skilled level for many years and continued working until well after the alleged onset date. Additionally, he graduated from high school, obtained a driver's license and obtained a college degree. While [Plaintiff's] activity level is supportive of some limitation, his overall functioning and background is suggestive of [Plaintiff] being able to perform at least unskilled work.

11

(Tr. at 25 (citing Tr. at 76-77, 744-45, 748-49).)  Accordingly, the ALJ limited Plaintiff "to unskilled work with no production pace, frequent to no interaction with others and occasional changes in the work place setting . . . to accommodate his bipolar disorder." (Tr. at 27.)  The ALJ further concluded that "additional restrictive functional limitations [were] not supported by the longitudinal medical record and the totality of evidence as discussed" in the administrative decision.  (Tr. at 27.)[5]

Crucially, in assessing Plaintiff's RFC, the ALJ also considered the opinions of the State agency psychological consultants, Bonny Gregory, M.D., Richard Cyr-McMillon, Ph.D., and Jacquelyn Harrison, Ph.D.  (Tr. at 27-28.)  At the initial level, Dr. Gregory found, in pertinent part, that Plaintiff had the ability to understand and remember and carry out very short and simple instructions and was able to maintain attention and concentration for two hours at a time as required for the performance of simple tasks "in a non-production oriented setting." (Tr. at 27, 139.) Dr. Harrison, who also considered the record at the initial level, found Plaintiff capable of understanding and remembering simple, two-step instructions and sustaining sufficient attention to complete simple, routine, repetitive tasks for a two-hour period "at a non production pace."  (Tr. at 28, 155-56.)  Finally, Dr. Cyr-McMillon determined at the reconsideration level that Plaintiff "may have some deficits in sustained concentration, persistence, and pace, but [he] is able to sustain sufficient attention to complete simple routine tasks for a 2-hour period at pace that is not highly production oriented."  (Tr. at 199.)

---

[5] Plaintiff does not raise any challenge to the ALJ's evaluation of the evidence or the evaluation of Plaintiff's symptoms.

The ALJ found all three of these medical opinions "partially persuasive." In doing so, the ALJ explained as follows:

> The findings are supported with in-depth explanations regarding the basis for these findings, including noting overall that [Plaintiff's] symptoms appear to be fairly well controlled when [he] is medication compliant[,] and [he] does not present with impaired cognition memory. Additionally, the findings are consistent with [Plaintiff's] mainly benign mental status findings, including frequent signs of intact social and cognitive functioning, including with his most recent mental health treatment. On the other hand, these were non-examining sources without benefit of the full record, or the testimony[,] and I decline to directly adopt their findings. [Plaintiff] retains the ability for greater than very short and simple instructions and could at least perform jobs of SVP level 2 as provided by the vocational expert because [Plaintiff's] cognition and/or memory were not impaired. [Plaintiff] has a high school education and also attended two years of college and obtained a business degree, which demonstrate at least an average level of intelligence with no evidence of any cognitive or intellectual decline since completion of that education.

(Tr. at 27.) The ALJ also noted that the findings were supported by examinations reflecting "intact orientation and goal directed thought process and normal attention span and concentration during visits to his medical providers." (Tr. at 28.) In addition, the ALJ found Plaintiff's work history "probative of [his] mental ability," noting that in spite of his mental health impairments, Plaintiff has "worked from SVP2 level jobs to SVP4 level jobs for the entire past relevant work period" and that "he has consistently worked since 1996." (Tr. at 27-28.)

Nevertheless, the ALJ recognized that all three of the State agency psychological consultants included some form of production limitation in Plaintiff's RFC to account for his moderately limited ability to maintain attention and concentration for extended periods. (Tr. at 27-28, 139, 155, 199.) Thus, as in Sizemore, 878 F.3d at 80-81, the ALJ complied with

Case 1:23-cv-00720-JEP   Document 18   Filed 09/27/24   Page 13 of 22

<u>Mascio</u> by relying on the uncontested opinions of the State agency psychologists to support his assessment of Plaintiff's concentration, persistence, and pace limitations.

Overall, the ALJ's discussion, the context given, and the additional limitations set out in the RFC provide sufficient explanation for the RFC limitations related to concentration, persistence, and pace. To the extent Plaintiff singles out the restriction precluding "production pace" work, that limitation is part of a larger description limiting Plaintiff to a position involving only "simple routine tasks and simple work related decisions" and "occasional changes in the workplace setting." (Tr. at 23.) <u>See</u> <u>Sizemore</u>, 878 F.3d at 80–81; <u>see also</u> <u>Gravel v. Kijakazi</u>, No. 5:21-CV-178-KDB, 2022 WL 3008437, at *3 (W.D.N.C. July 28, 2022) ("'[T]he use of the term 'non-production workplace setting' is not so indefinite in this context that the case must be remanded. The Court understands the phrase simply to refer to jobs which do not involve participating in the production of goods, such as on an assembly line."); <u>Christopher J. v. O'Malley</u>, No. 1:23CV743, 2024 WL 3400525, at *4-5 (M.D.N.C. July 12, 2024) (noting that "the VE here did not express any difficulty in understanding the meaning of the ALJ's preclusion of 'production pace' or 'quota-based' work in responding to the ALJ's dispositive hypothetical question" and noting that <u>Taylor</u> and <u>Perry</u> "did not create a categorical rule that failing to define certain terms constitutes a reversible error, but, rather, clarified that a reviewing court's ability to understand phrases such as 'production rate o[r] pace' in an ALJ's opinion depends on the phrase's context and use." (internal citations and quotations omitted)); <u>Shaw v. Kijakazi</u>, No. 1:20CV581, 2021 WL 3079905, at *7 (M.D.N.C. July 21, 2021) (concluding that remand was not required where the ALJ found that the claimant could perform simple, routine, repetitive tasks but not at a "production rate pace"),

recommendation adopted, 2021 WL 6202788 (M.D.N.C. Aug. 23, 2021) (Osteen, J.); Wood

v. Comm'r of Soc. Sec., No. 1:20CV231, 2022 WL 18635520, at *8 (W.D.N.C. Sept. 21, 2022);

O'Dell v. Saul, No. 5:20CV48, 2021 WL 1233480, at *6 (W.D.N.C. Apr. 1, 2021).[6]

Accordingly, the Court finds no basis for remand.

    B. DOT Conflict

    Plaintiff next challenges the ALJ's reliance on vocational expert testimony at step five

of the sequential analysis. At step five, the ALJ identified three jobs that Plaintiff remained

capable of performing despite his impairments: (1) marker, DOT 209.587-034, 1991 WL

671802, (2) router, DOT 222.587-038, 1991 WL 672123, and (3) office helper, DOT 239.567-

010, 1991 WL 672232. (Tr. at 30-31.) Plaintiff now contends that the DOT descriptions for

all of these jobs conflict with the VE's testimony that Plaintiff could perform them while

limited to "occasional changes in the workplace setting." (Pl.'s Br. at 4 (citing Tr. at 23, 122-

---

[6] Further, the decision of the Western District of North Carolina in Gravel also posits "an independent reason to affirm the ALJ's decision on this point," explaining that none of the jobs the ALJ relied on at step five "involve a 'production' setting of any kind." 2022 WL 3008437, at *3. Accordingly, the court concluded that "the 'production' limitation was in practical effect irrelevant to the ALJ's ultimate decision and thus would be harmless error if it was error at all." Id. (citing Shinseki v. Sanders, 556 U.S. 396, 407-10 (2009) (requiring the party attacking an administrative decision to prove that an error harmed her case)). The same holds true in the present case. At step five, the ALJ identified three jobs that Plaintiff remained capable of performing despite his impairments: (1) marker, DOT 209.587-034, 1991 WL 671802, (2) router, DOT 222.587-038, 1991 WL 672123, and (3) office helper, DOT 239.567-010, 1991 WL 672232. (Tr. at 30-31.) Nothing in the DOT job descriptions for any of these positions suggests that the jobs in question involve "production" work. See also, e.g., Christopher J. v. O'Malley, No. 1:23CV743, 2024 WL 3400525, at *4 (M.D.N.C. July 12, 2024) (finding no basis for remand where the Vocation Expert "provided three jobs that fit within the ALJ's non-production restriction" including Marker, and noting that "[n]one of those DOT descriptions would compel the Court to find that those jobs actually involved production-pace or quota-based work."); Ashley A.F. v. O'Malley, No. 1:22CV983, 2024 WL 345733, at *11 (M.D.N.C. Jan. 30, 2024) (holding that the position of Marker "fit within the ALJ's non-production restriction"); Spurlock v. Berryhill, No. 1:17CV411, 2018 WL 791302, at *7 (M.D.N.C. Feb. 8, 2018) (finding no conflict between the position of Marker and a limitation to no high production demands). To the extent Plaintiff further argues that these jobs are inconsistent with the RFC restriction to "occasional changes in the workplace setting," the Court addresses that issue in subsection B of this Opinion.

24).) As such, Plaintiff argues that his case merits remand under the Fourth Circuit's holdings in Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015).

The Fourth Circuit Court of Appeals has recognized that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between VE testimony and the provisions of the DOT, regardless of whether a conflict is identified by the VE. Pearson, 810 F.3d at 208-09, 210. In Pearson, because of this apparent conflict between the VE's testimony and the DOT, remand was required so that the ALJ could elicit a reasonable "explanation from the expert" before relying on the expert's testimony. Id. at 208-09, 211. In 2019, in Thomas v. Berryhill, the Fourth Circuit applied the principles articulated in Pearson as they related to the DOT's Reasoning Development scale. See Thomas, 916 F.3d at 314. That scale has six levels—Level 1 requires the least reasoning ability, and Level 6 requires the most reasoning ability. See U.S. Dep't of Lab., DOT, App. C, 1991 WL 688702.[7] The DOT assigns a Reasoning Development Level to each occupation identified therein. In Thomas, the vocational expert identified three jobs, all with a Reasoning Level of 2, "requir[ing] employees to 'carry out detailed but uninvolved written or oral instructions.' By comparison,

---

[7] The Reasoning Levels relevant to this case, Level 1 and Level 2, are defined as follows:

LEVEL 2
Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1
Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

U.S. Dep't of Lab., DOT, App. C, 1991 WL 688702.

Thomas's RFC limit[ed] her to jobs that involve only 'short, simple instructions.'" <u>Thomas</u>, 916 F.3d at 314 (internal citations omitted). The Fourth Circuit found

> that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions. This is not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved. Even so, the conflict between Thomas's limitation to short, simple instructions and the VE's testimony that Thomas could perform jobs that include detailed but uninvolved instructions is as apparent as the conflict we identified in <u>Pearson</u>. Since we held that an apparent conflict existed in <u>Pearson</u>, we are satisfied that one exists in this case, too. We remand so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

<u>Id.</u> Consequently, in <u>Thomas</u>, the Fourth Circuit held that there was an apparent conflict between jobs requiring Reasoning Level 2 and a limitation to "short, simple instructions." <u>Id.</u>[8]

In the present case, Plaintiff's challenge involves the second component defining jobs with a Reasoning Development Level of 2 , rather than the issue addressed in <u>Thomas</u> and its progeny. Specifically, Plaintiff argues that the limitation to jobs with only "occasional changes in the workplace setting" conflicts with the Reasoning Level 2 requirement that he be able to "[d]eal with problems involving a few concrete variables in or from standardized situations." (Pl.'s Br. at 5 (citing <u>Austin v. Berryhill</u>, No. 1:17-1797, 2018 WL 2392209, at *22 (D.S.C. Apr.

---

[8] However, in <u>Lawrence v. Saul</u>, 941 F.3d 140, 143 (4th Cir. 2019), the Fourth Circuit clarified that this conflict results from the restriction to "short" instructions, rather than the restriction to "simple" instructions or tasks.

> "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include. In contrast, the [ALJ] found that Lawrence could perform jobs limited to "simple, routine repetitive tasks of unskilled work." There is no comparable inconsistency between Lawrence's [RFC] . . . and Level 2's notions of "detailed but uninvolved . . . instructions" and tasks with "a few [ ] variables."

<u>Id.</u> (citations omitted).

24, 2018).) In contrast, jobs with a Reasoning Level 1 require claimants to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dep't of Lab., DOT, App. C, 1991 WL 688702. In support of his argument, Plaintiff relies on Reasoning Level 1's use of the term "occasional" and two unpublished cases from another district. (Pl.'s Br. at 5 (citing Austin, 2018 WL 2392209, at *20 (holding that a limitation to jobs that "deal with occasional workplace changes seems to be most consistent with work at GED reasoning level one"), and Watts v. Berryhill, No. 1:17-127, 2017 WL 4325685, at *12 (D.S.C. Sept. 12, 2017) (same))).

Defendant, in turn, counters that "[t]he decisions in Austin and Wells are inconsistent with other cases that have specifically addressed the question of whether a limitation regarding workplace changes poses any conflict with the DOT's definitions of reasoning level." (Def.'s Br. [Doc. #9] at 18.) In particular, Defendant cites Cromwell v. Colvin, No. 7:13CV186, 2015 WL 103891, at *6 (E.D.N.C. Jan. 7, 2015), in which the court found no conflict between a limitation to no more than occasional changes in the work setting and Level 3 reasoning, a level higher than the one at issue here, as defined by the DOT. The Cromwell court noted that there was "no apparent inconsistency in the VE's expert and reasoned conclusion that a job involving 'concrete variable in or from standardized situations' would also be characterized by only occasional changes in the work setting." Id. The court further noted that the claimant "failed to demonstrate that any of the jobs identified by the VE actually require more than occasional changes in the work setting." Id.; see also Ward v. Comm'r, No. CV-21-08029, 2023 WL 2425016, at *5 (D. Ariz. Mar. 9, 2023) (holding that "the fact that the ALJ used the phrase 'occasional routine changes' in her limitation does not automatically limit [plaintiff] to

Level 1 Reasoning jobs simply because the Level 1 Reasoning definition uses the word 'occasional.'"), aff'd, 2024 WL 1108573 (9th Cir. Mar. 14, 2024); S. v. Kijakazi, No. 5:21CV436, 2022 WL 5238147, at *4 (C.D. Cal. Aug. 31, 2022) (holding that a Reasoning Level 2 job "does not raise an obvious or apparent conflict with Plaintiff's limitation to few workplace changes."); Kelly P. v. Saul, No. 5:18CV00777, 2019 WL 3573591, at *5 (C.D. Cal. Aug. 6, 2019) (explaining that "[a]n occupation that requires a worker to employ Reasoning Level 2 by dealing with problems involving a few concrete variables does not raise an obvious or apparent conflict with Plaintiff's limitation to only minimal changes in the workplace setting or routine.").

In urging the Court to follow this line of case law rather than Austin and Watts, Defendant emphasizes the consistency of Cromwell's reasoning with the standards underpinning the DOT's definitions. Defendant correctly notes that the reasoning levels set out in the DOT are part of the Scale of General Education Development ("GED"), which "embraces those aspects of education (formal and informal) which are required of the work for satisfactory job performance." U.S. Dep't of Lab., DOT, App C, 1991 WL 688702. Given this context, Defendant asserts that a claimant's ability to handle variations from "standardized situations" refers to variations in job duties, rather than changes in the work setting. (Def.'s Br. at 16.) Because Plaintiff's argument conflates "the ability—obtained through education— to reason through increasingly complex problems" with "the ability to adjust to a specific number (or frequency) of changes in the work setting," it necessarily fails in terms of presenting an apparent DOT conflict. (Def.'s Br. at 16.) Defendant further argues that Plaintiff, like the claimant in Cromwell, fails to "offer any analysis of the occupations at issue

here to explain why they might involve more than occasional changes in the work setting." (Def.'s Br. at 16-17.)

A recent case in this District generally adopted the Defendant's analysis on this point and rejected the contention that VE testimony involving a restriction to "occasional changes in a routine work setting" conflicts with the DOT provisions for jobs with Reasoning Level 2. See Clifford E. v. O'Malley, No. 1:23CV704, 2024 WL 3105669 (M.D.N.C. June 24, 2024) (Auld, M.J.) (citing Stiffler v. O'Malley, 102 F.4th 1102 (9th Cir. 2024) and Ward v. O'Malley, No. 23-15541, 2024 WL 1108573 (9th Cir. Mar. 14, 2024)). As explained by the Court of Appeals for the Ninth Circuit in Stiffler,

> this case turns on the distinction between limitations in the workplace environment, and limitations on the tasks performed. Contrary to [the plaintiff]'s proposition, there was no conflict between [her] limitation of "few workplace changes" and inclusion of "the ability to deal with problems involving few concrete variables" in Reasoning Level 2. The capacity to "deal with problems involving a few concrete variables in or from standardized situations,". . . identified in Reasoning Level 2, refers to the "situational variables" that may arise when performing an assigned task. Zavalin[ v. Colvin, 778 F.3d 842, 848 (9th Cir. 2015)]. For example, Zavalin explained that a cashier may be confronted with varying situations in the course of "reconciling the cash on hand against the cash register's tape and issuing credit memorandums to customers." Id.
>
> On the other hand, the ALJ's reference to an "environment with few workplace changes" concerns broader revisions to the workplace environment. The applicable regulation explains that performance of a job often requires "[d]ealing with changes in a routine work setting," so the inquiry into whether a claimant has an impairment that limits the ability to do basic work activities involves considering to what extent the claimant is able to adapt to changes in the "work setting." 20 C.F.R. § 404.1522(b)(6). As the Supreme Court has explained in another context, "[t]he workplace includes those areas and items that are related to work and are generally within the employer's control." O'Connor v. Ortega, 480 U.S. 709, 715 (1987). The workplace environment or setting would generally include, for example, the location or physical surroundings of the area where the worker's duties are performed. . . .

20

By way of example, the Supreme Court in O'Connor referenced a hospital and described the "hallways, cafeteria, offices, desks, and file cabinets" as "all part of the workplace." Id. at 716. Changes to the workplace setting itself – such as requiring workers to work in a different area of the workplace each day or to travel to different locations for each shift – are distinct from "*situational* variables" in the tasks being performed. Zavalin, 778 F.3d at 848 (emphasis added).

Considering the distinction between "an environment with few workplace changes" and "few variables" in the work to be performed, there was no apparent conflict for the ALJ to resolve between the testimony of the vocational expert and the DOT. See Zavalin, 778 F.3d at 846.

Stiffler, 102 F.4th at 1109-10.

This Court agrees. The VE in this case stated that her testimony was not inconsistent with the DOT. (Tr. at 124-25.) Although the Fourth Circuit recognized in Pearson, which postdates Cromwell, that an ALJ has an affirmative "duty to make an independent identification of apparent conflicts" between VE testimony and the provisions of the DOT, regardless of whether a conflict is identified by the VE, this additional instruction fails to alter the outcome here. Pearson, 810 F.3d at 208-09, 210. Specifically, Plaintiff has failed to demonstrate, under the relevant definitions provided in the DOT, that an apparent conflict exists between jobs with a Reasoning Level 2 and a limitation to no more than "occasional changes in the workplace setting." Moreover, none of the jobs identified by the VE and adopted by the ALJ at step five of the sequential analysis, according to their DOT descriptions, appear to require more than occasional changes in the workplace setting. See DOT 209.587-034, 1991 WL 671802; DOT 222.587-038, 1991 WL 672123; and DOT 239.567-010, 1991 WL 672232. Under these facts, the Court finds no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #8] is DENIED, that

Defendant's Dispositive Brief [Doc. #9] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 27th day of September, 2024.

Joi Elizabeth Peake
United States Magistrate Judge